# Exhibit 1

**Registered Agent Solutions, Inc.**
*Corporate Mailing Address*
1701 Directors Blvd.
Suite 300
Austin, TX 78744

Phone: (888) 705-RASi (7274)

# SERVICE OF PROCESS RECEIPT

2022-10-11

Ignacio Rivera
**American Alternative Insurance Corporation**
555 College Road East
Princeton, NJ 08540 USA

**NOTICE OF CONFIDENTIALITY**

This notice and the information it contains are intended to be a confidential communication only to the individual and/or entity to whom it is addressed. If you have received this notice in error, immediately call our SOP Department at (888) 705-7274.

**RE:** American Alternative Insurance Corporation

This receipt is to inform you that Registered Agent Solutions, Inc. has received a Service of Process on behalf of the above-referenced entity as your registered agent and is hereby forwarding the attached document(s) for your immediate review. A summary of the service is shown below; however, it is important that you review the attached document(s) in their entirety for complete and detailed information.
For additional information and instruction, contact the document issuer: OADE, STROUD & KLEIMAN

### SERVICE INFORMATION

| | |
|---|---|
| Service Date: | 2022-10-11 |
| Service Time: | 11:10 AM EDT |
| Service Method: | Mail (Certified) |

### RASi REFERENCE INFORMATION

| | |
|---|---|
| Service No.: | 0230329 |
| RASi Office: | Michigan |
| Rec. Int. Id.: | AES |

### CASE INFORMATION

| | |
|---|---|
| Case Number: | 22-958-CK |
| File Date: | 10/04/2022 |
| Jurisdiction: | 56TH JUDICIAL CIRCUIT COURT, MICHIGAN |
| Case Title: | RE: LANSING BOARD OF WATER & LIGHT V. AMERICAN ALT. INSURANCE CO., ET AL. |

### ANSWER / APPEARANCE INFORMATION

21 days

*(Be sure to review the document(s) for any required response dates)*

### AGENCY / PLAINTIFF INFORMATION

| | |
|---|---|
| Firm/Issuing Agent: | OADE, STROUD & KLEIMAN |
| Attorney/Contact: | TED W. STROUD |
| Location: | Michigan |
| Telephone No.: | 517-351-3550 |

### DOCUMENT(S) RECEIVED & ATTACHED

Complaint
Summons
Notice: TO CONSUMER OR EMPLOYEE
Affidavit / Certification

### ADDITIONAL NOTES

**Questions or Comments...** Should you have any questions or need additional assistance, please contact the SOP Department at (888) 705-7274.

You have been notified of this Service of Process by Insta-SOP Delivery, a secure email transmission. The transmitted documents have also been uploaded to your Corpliance account. RASi offers additional methods of notification including Telephone Notification and FedEx Delivery. If you would like to update your account's notification preferences, please log into your Corpliance account at www.rasi.com.

*Thank you for your continued business!*

# OADE, STROUD & KLEIMAN

ATTORNEYS AT LAW
PROFESSIONAL CORPORATION
200 WOODLAND PASS, P.O. BOX 1296, EAST LANSING MI  48826-1296
PHONE (517) 351-3550  ◆  FAX (517) 351-9428
e-mail: stroud@osklaw.com

TED W. STROUD
RANDALL B. KLEIMAN*
LEIGH A. HANSMANN
ELLEN E. KLEIMAN WARD**
KATHRYN J. GABEL

OF COUNSEL
KENNETH U. LUCAS

*also admitted in OH
**also admitted in CA

October 5, 2022

American Alternative Insurance Corporation
c/o Registered Agent Solutions, Inc
2285 South Michigan Rd., PO Box 266
Eaton Rapids, Michigan 48827

**VIA CERTIFIED MAIL**
7021 0350 0001 2803 6220

Re: *Lansing Board of Water and Light v American Alternative Insurance Corporation, Allianz Global Risks US Insurance Company, Lexington Insurance Company, and Liberty Mutual Insurance Company*
Case No. 22-958-CK (Hon. Janice K. Cunningham)

Dear Sir/Madam:

Enclosed for service is a Summons and Complaint regarding the matter referenced above.

If you have any questions, please contact me.

Very truly yours,

OADE, STROUD & KLEIMAN, P.C.

Ted W. Stroud

TWS/ra
cc: Lansing Board of Water and Light (*via email*)

| Approved, SCAO | Original - Court | 2nd copy - Plaintiff |
|---|---|---|
| | 1st copy - Defendant | 3rd copy - Return |

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| 56th JUDICIAL DISTRICT / JUDICIAL CIRCUIT / COUNTY PROBATE | **SUMMONS** | 22-958-CK |

**Court address**
1045 Independence Blvd, Charlotte, MI 48813

**Court telephone no.**
(517) 543-7500

**Plaintiff's name(s), address(es), and telephone no(s).**
Lansing Board of Water and Light
PO Box 13007
Lansing, MI 48901

v

**Defendant's name(s), address(es), and telephone no(s).**
American Alternative Insurance Corporation
c/o Registered Agent Solutions, Inc.
2285 South Michigan Rd., PO Box 266
Eaton Rapids, MI 48827

**Plaintiff's attorney, bar no., address, and telephone no.**
Ted W. Stroud (P30196)
OADE, STROUD & KLEIMAN, P.C
200 Woodland Pass, PO Box 1296
East Lansing, MI 48823-1296    (517) 351-3550

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in ☐ this court, ☐ _____ Court, where it was given case number _____ and assigned to Judge _____.
The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.    **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| 10/4/22 | 1/3/23 | Diana Bosworth |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (9/19)   **SUMMONS**                          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

| PROOF OF SERVICE | SUMMONS |
| --- | --- |
| | Case No. 22- -CK |

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

☐ **OFFICER CERTIFICATE** OR ☐ **AFFIDAVIT OF PROCESS SERVER**
I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required)
Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), that: (notarization required)

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,
together with _____
List all documents served with the summons and complaint
_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
| --- | --- | --- |
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
| --- | --- | --- |
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Fee | | Signature |
| --- | --- | --- | --- | --- |
| $ | | $ | | |
| Incorrect address fee | Miles traveled | Fee | TOTAL FEE | Name (type or print) |
| $ | | $ | $ | |
| | | | | Title |

Subscribed and sworn to before me on _____, _____ County, Michigan.
                                    Date
My commission expires: _____ Signature: _____
                        Date                Deputy court clerk/Notary public
Notary public, State of Michigan, County of _____

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                   Attachments
_____ on _____
             Day, date, time
_____ on behalf of _____.
Signature

STATE OF MICHIGAN
IN THE 56TH CIRCUIT COURT FOR THE COUNTY OF EATON

| | |
|---|---|
| LANSING BOARD OF WATER AND LIGHT, a municipally owned public utility. <br><br> Plaintiff, <br><br> V <br><br> AMERICAN ALTERNATIVE INSURANCE, CORPORATION, a foreign insurance company, ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, a foreign insurance company, LEXINGTON INSURANCE COMPANY, a foreign insurance company, and LIBERTY MUTUAL INSURANCE COMPANY, a foreign insurance company. <br><br> Defendants, | **COMPLAINT** <br><br> Case No: 22-958 CK <br><br> Hon. |

Ted W. Stroud (P30196)
Ellen E. Ward (P78277)
OADE, STROUD & KLEIMAN, P.C.
Counsel for plaintiff
200 Woodland Pass, PO Box 1296
East Lansing, MI  48826-1296
(517) 351-3550
stroud@osklaw.com

NOW COMES plaintiff Lansing Board of Water & Light by and through its attorneys, Oade, Stroud & Kleiman, P.C., and for its Complaint states as follows:

1. Plaintiff Lansing Board of Water & Light (hereafter "BWL") is a municipally owned public utility responsible for managing certain utility services for the City of Lansing and portions of Ingham, Eaton and Clinton counties, Michigan.

2. Defendant American Alternative Insurance Corporation (hereafter "AAIC") is a foreign insurance company that conducts insurance business in Michigan, and which carries on a portion of that business in Eaton County.

3. Defendant Allianz Global Risks US Insurance Company (hereafter "Allianz") is a foreign insurance company that conducts insurance business in Michigan, and which carries on a portion of that business in Eaton County.

4. Defendant Lexington Insurance Company (hereafter "AIG") is a foreign insurance company authorized to conduct insurance business in Michigan, and which carries on a portion of that business in Eaton County.

5. Defendant Liberty Mutual Insurance Company (hereafter "Liberty") is a foreign insurance company that conducts insurance business in Michigan, and which carries on a portion of that business in Eaton County.

6. In connection with construction of a natural gas power plant known as Delta Energy Park (the "Project"), in Delta Township, Eaton County, Michigan, BWL, as owner, obtained builders risk insurance through a direct insurance program in which each of the defendants participated in varying percentages.

7. Work on the Project began in 2019.

8. The "original" or "followed" builders risk policy of the direct insurance program for the Project was issued by AAIC and, subject to one exception, each builders risk policy of the other three defendants were, in all material respects, identical except as to the coverage limit for each defendant. The Allianz policy includes a General Change Endorsement that modifies Memorandum 21, Contractors Expense, in a material way.

9. The total direct insurance program for builders risk coverage for the Project, subject to various sub-limits, is $310,000,000.

10. On September 5, 2019, with a retroactive coverage date commencing May 1, 2019, defendant AAIC executed and issued BWL its builders risk Policy No 58-A2-EI-0000120-00 for 25% of the direct insurance program for the Project; AAIC's total limit of liability being $77,500,000. AAIC is in possession of its Policy No.: 58-A2-EI-0000120-00.

11. The premium for the AAIC builders risk policy was paid in full by BWL.

12. On May 1, 2019, defendant Allianz executed and issued BWL its builders risk Policy No.: USE00061919 for 25% of the direct insurance program for the Project; Allianz's total limit of liability being $77,500,000. Allianz is in possession of its Policy No.: USE00061919.

13. The premium for the Allianz builders risk policy was paid in full by BWL.

14. On May 1, 2019, defendant AIG executed and issued BWL its builders risk Policy No.: 058326014 for 35% of the direct insurance program for the Project; AAIC's total limit of liability being $108,500,000. AIG is in possession of its Policy No.: 058326014.

15. The premium for the AIG builders risk policy was paid in full by BWL.

16. On May 1, 2019, defendant Liberty executed and issued BWL its builders risk Policy No.: 4NABSKA8001 for 15% of the direct insurance program for the Project; Liberty's total limit of liability being $46,500,000. Liberty is in possession of its Policy No.: 4NABSKA8001.

17. The premium for the Liberty builders risk policy was paid in full by BWL.

18. On March 10, 2020, while construction of the Project was underway, the Governor of the State of Michigan declared a state of emergency across the State of Michigan due to presumptive positive cases of novel coronavirus (hereafter "COVID-19") having been identified in Michigan.

19. The Governor issued Executive Order 2020-21, effective March 24, 2020, which shut down all non-essential personal, social, and work life in Michigan to combat the spread of COVID-19.

20. Executive Order 2020-21 stopped all work on the Project.

21. Executive Order 2020-21 was followed by a series of subsequent Executive Orders including Executive Order 2020-70 which, in effect, allowed construction work on the Project to resume May 7, 2020, subject however to extraordinary restrictions and work requirements aimed at combating the spread of COVID-19 and enhancing a safe work environment.

22. In addition to the Executive Orders issued by the Governor, there were rules and guidelines promulgated by the United States Department of Labor, Occupational Safety and Health Administration ("OSHA") establishing workplace rules designed to combat the spread of COVID-19 and enhance workplace safety.

23. BWL is informed, and believes, that COVID-19 is a ubiquitous human pathogen that was present at its Project.

24. As a direct consequence of the presumed presence of the COVID-19 virus at the Project, and the state and federal orders and guidelines, all work on the Project was halted for a period of time.

25. When work was allowed to resume on the Project, the Executive Orders and OSHA guidelines imposed extra ordinary restrictive workplace rules and enhanced cleaning protocols.

26. As a direct consequence of state and federal orders and guidelines, and the presumed presence of the COVID-19 virus at the Project, contractors working for BWL on the Project incurred hundreds of thousands of dollars of delay and extra expense which has been billed to, and paid by, BWL.

27. During the period of complete shutdown, and for a time after work was allowed to resume, BWL incurred tens of thousands of dollars of extra expense associated with additional Project oversight and extra ordinary cleaning to combat the spread of COVID-19 and enhanced workplace safety.

28. BWL has incurred a loss of not less than $1,734,174.00 as a consequence of being prohibited from the free and unrestricted use of its Project during the period of shut down and after work was allowed to resume on the Project, for re-mobilization, increased labor and material costs, compliance with extra ordinary work rules and enhanced cleaning expense.

29. BWL has submitted claims to each of the four defendants for its losses and extra expense.

30. BWL is informed and believes that each of the four defendants will deny BWL's claims.

31. Denial of BWL's claims is a breach by each defendant of defendants' duties in their respective builders risk insurance policies.

## COUNT I

32. BWL incorporates its allegations above.

33. The "followed" or "original" builders risk policy of AAIC provides:

INSURING CLAUSE

The Insurers shall, subject to the Terms of this Contract of Insurance, indemnify the Insured against physical loss or damage to Property Insured, occurring during the Period of Insurance and happening on the Project Site.

34. "Property Insured" is defined "As stated in the Risk Details." In Risk Details "Property Insured" is defined as:

> Permanent works, materials (including those supplied free to the Project by or on behalf of the Principal, provided the value is included in the Contract Works Sum Insured), temporary works, equipment, machinery, supplies, temporary buildings

and their contents, camps and their contents, and all other property used for or in connection with the Project.

"Project" is defined as:

The financing, prefabrication, design, engineering, procurement, construction, erection, Hot Testing and Commissioning of the NGCCP/Delta Energy Park and all ancillary work connected therewith.

35. The terms "physical loss" and "damage" are not defined in defendants' policies.

36. As a matter of law and common understanding, "damage to Property" includes harm to BWL's rights in the free and unrestricted right to continue work at the Project. "'Property' in a thing does not consist merely in its ownership or possession, but also in the lawful, unrestricted right of its use,..." *Laurence G Wolf Capital Mgt Trust v City of Ferndale*, 269 Mich App 265; 713 NW2d 274 (2005).

37. As a matter of law and common understanding, "'Damage' is defined as "injury or harm that reduces value, usefulness, etc." Random House Webster's College Dictionary (1997). Combining the definitions, then, the plain and ordinary meaning of the phrase "property damage" includes injury or harm to one's rights or interests associated with an object." *Id* at 271.

38. By virtue of the Governor's Executive Orders and OSHA guidelines, and the presumed presence of the COVD-19 virus at the Project, BWL suffered damage to property when BWL was prevented from continuing construction work at the Project.

39. BWL acknowledges *Gavrilides Mgt Co, LLC v Mich Ins Co*, ___NW2d___; 2022 Mich. App. LEXIS 632, (Ct App, Feb. 1, 2022), but asserts that *Gavrilides* does not apply to the builders risk policies of defendants due to differences in the insuring clause language in defendants' builders risk policies which insure against "physical loss or damage to Property" whereas the insuring clause construed in *Gavrilides* insured against "direct physical loss of or damage to property."

40. The Court of Appeals in *Gavrilides* was clear that it was construing an insuring agreement that required "direct physical loss of property" or "direct physical damage to property." *Id* at 11-12.

41. The Court of Appeals in *Gavrilides* considered, but rejected, the claim that "loss or damage can include contamination to the environment within a building, such as the air, even in the absence of any detectable alteration to the structure or other property" under the insuring agreement in *Gavrilides* explaining: "We find this latter argument questionable because it seemingly describes an indirect physical loss or damage, which would be precluded by the word "direct" in the policy." *Id* at 12.

42. Defendants' ensuring clause does not require "direct" physical loss or damage to Property Insured and for that reason, and others, the holding in *Gavrilides* does not bar BWL's claim in this action.

43. The insuring clause in *Gavrilides* provides "direct physical loss of or damage to property." The insuring clause in *Gavrilides* does *not* provide "direct physical loss of or *direct physical* damage to property."

44. To support its holding that damage to property must be "physical," the Court of Appeals in *Gavrilides* held that: "As used here, the policy clearly requires 'direct physical loss of property' or 'direct physical damage to property.'" *Id* at 11.

45. BWL respectfully submits that "a court must construe and apply unambiguous contract provisions as written," *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005) and the Court of Appeals erred in holding that properly understood the insuring clause in *Gavrilides* requires "*direct physical* damage to property."

46. As recognized by the Court of Appeals, *Gavrilides* presents issues of significant public importance, and as of the filing of this action, *Gavrilides* is pending on an application for leave to appeal before the Michigan Supreme Court.

## COUNT II

47. BWL incorporates its allegations above.

48. The "followed" or "original" builders risk policy of AAIC provides: "Subject otherwise to the Terms of this Contract of Insurance the following Memoranda are to be incorporated in and deemed to form part of this Contract of Insurance."

49. Memoranda 16 entitled "Extra Expense" provides in relevant part:

> The Insurers shall indemnify the Insured for costs and expenses (Extra Expense) incurred by the Insured, if at any time during the Period of Insurance any, or all the Property Insured, suffers physical loss or damage indemnifiable under this Section of the Contract of Insurance,
> Extra Expense includes:
>
> (i) the reasonable extra expenses, incurred to continue the Project as nearly normal as practicable;

50. As described above, BWL has suffered damage to its Project within the scope of Memoranda 16.

51. BWL has incurred not less than $1,734,174.00 of reasonable extra expenses to continue the Project as nearly normal as practicable after the damage to the Project as described above.

## COUNT III

52. BWL incorporates its allegations above.

53. The AAIC, AIG and Liberty builders risk policies contain a Memoranda 21 entitled "Contractor's Expense" which provides in relevant part:

> A. Continuing Hire Charges

)ADE, STROUD KLEIMAN, P.C.
ATTORNEYS AT LAW
T LANSING, MICHIGAN

8

In respect of construction plant and equipment (including site huts or other temporary buildings or structures) hired to the Insured this Policy extends to indemnify the Insured in respect of expenses incurred by the Insured under the terms of any hiring agreement or otherwise to pay continuing hire charges incurred as a result of:

a) Damage to such items

b) Damage indemnifiable hereunder to the permanent or temporary works which directly renders the item(s) idle provided that the first seventy two (72) hours of such idle time is excluded, and the insurers maximum liability hereon is subject to the additional limit stated in the schedule.

B. Continuing Wages and Overheads

This Policy also insurers continuing wages and overheads of Site personnel reasonably and necessarily retained on Site during the period of the insured repair or replacement who during this period are unable to carry out their work in whole or in part. Subject to the additional limit stated in the Schedule.

C. Contractors Extra Expense

This Policy is extended for Barton Marlow's to insure Contractors Extra Expense incurred in order to complete the Project following Damage indemnifiable under this Policy.

Contractors Extra Expense Means:

a) Additional interest on money borrowed to finance construction or repair;

b) Additional real estate and property taxes incurred for the period of time that construction extends beyond the Scheduled Commercial Operation Date;

c) The additional costs incurred for preventative maintenance, protection and laying up of Property Insured not Damaged in order to keep such Property Insured in the same condition as it was in immediately prior to the Damage. It is agreed that such preventative maintenance, protection and laying up of Property Insured shall be carried out in accordance with the original equipment manufacturers' recommendations;

d) Any reasonable costs incurred to maintain and/or extend warranties for purposes of meeting the requirements of the Project Agreements; or

e) Additional amounts (other than as recovered under a – d above) by which the cost of the permanent or temporary works incomplete at the date of the Damage shall exceed the cost to the contractor which would have been incurred but for any delay caused by the Damage, it being understood that additional costs incurred to accelerate the progress of uncommenced works is excluded;

which become necessary as a result of indemnifiable Damage and which are incurred by the Insured under this Endorsement over and above the pre-loss projected cost for any recoverable item.

The Contractors Extra Expense coverage provided by this Policy is subject to the following additional provisions:

a) As soon as practicable after any loss, the Insured shall exercise due diligence and dispatch in the reinstatement of the Damage and utilize all reasonable means to reduce the amount of the loss including;
i) Resumption of construction, business or operations completely or partially;
ii) Making use of materials, equipment, supplies, or other property at the Insured's premises or elsewhere; or
iii) Making use of substitute facilities or services where practical; and such reduction will be taken into account in arriving at the amount of such loss;

b) In the event any relevant contract contains a penalty clause providing for payments to the Insured under this Endorsement for a delay caused by indemnifiable Damage, any portion of such penalty inuring to the benefit of the Insured under this Endorsement shall be taken into consideration in the settlement of any loss hereunder;

c) Coverage provided under this Endorsement is strictly in relation to those costs and expenses that are not otherwise insured under any other part of this Policy.

54. In contrast to the insuring clause in the body of these defendants' builders risk policies, the insuring clause of the Contractor's Expense Memoranda does not require that damage triggering coverage be "physical."

55. As described above, BWL has suffered damage to its Project.

56. BWL has incurred not less than $1,734,174.00 of reasonable extra expenses to continue the Project as nearly normal as practicable after the damage to the Project as described above

WHEREFORE, plaintiff Lansing Board of Water and Light requests entry of this Court's money judgment as follows:

1. $433,543.50 as to defendant American Alternative Insurance Corporation;

2. $433,543.50 as to defendant Allianz Global Risks US Insurance Company;

3. $606,960.90 as to defendant Lexington Insurance Company; and

4. $260,126.10 as to defendant Liberty Mutual Insurance Company.

together with interest, costs and attorney fees to be taxed.

Respectfully submitted,

OADE, STROUD & KLEIMAN, P.C.
Attorneys for plaintiff

Dated: October __, 2022

_____
Ted W. Stroud (P30196)